## CLEMENTS *v*. THE STATE.

1. If one wilfully and with malice aforethought unlawfully shoot another with a pistol, inflicting a wound which, though not necessarily mortal, is the primary cause of a disease which brings about the death of the wounded person, he is guilty of murder.
2. The charge on the subject of voluntary manslaughter was neither vague nor indefinite.
3. The evidence did not authorize an instruction on the law of involuntary manslaughter.
4. Where one shoots another with a pistol, inflicting a wound which causes a disease from which the wounded person dies, on his trial for murder it is not erroneous to omit an instruction on the law of assault with intent to murder.
5. The evidence authorized the verdict, and no sufficient reason is made to appear for the grant of a new trial.

MAY 14, 1914.

Indictment for murder. Before Judge Thomas. Lowndes superior court. February 21, 1914.

*E. K. Wilcox* and *Knight, Chastain & Gaskins,* for plaintiff in error. *Warren Grice, attorney-general,* and *J. A. Wilkes, solicitor-general,* contra.

EVANS, P. J. The plaintiff in error was convicted of the murder of E. J. Griffin, and recommended to mercy. He was refused a new trial, and brings error. There was evidence tending to show that the defendant, the decedent, and five others started in an automobile for Valdosta. The trip was for pleasure. After proceeding a short distance the automobile broke down, and one of the party was sent for mules to have the machine drawn back to the home of the deceased, who was the owner of the car. After the automobile broke down the defendant and the deceased engaged in "shooting dice" for money, and the defendant lost. He applied to his companions for a loan of money, which was refused. He then went down the road a short space from the car and fired his pistol in the direction of the car, the bullet piercing one of the fenders. The decedent exclaimed "Don't shoot at the automobile that way, it would cost $50 to $75 to have it fixed." The defend-

ant got in front of the car and asked the decedent if he did not like it. The deceased replied, "No, don't shoot the car that way." The defendant then said, "No, if you don't like it I will shoot you," and immediately began firing on the deceased, who was wounded in the leg near the knee, and in the hands. The defendant shot at the deceased three times. When he first began firing, the deceased had no weapon in his hands; but after the deceased had been twice fired upon, he shot at the defendant. The deceased was removed to his home, and his wound was dressed by a surgeon. About nine or ten days thereafter septicæmia or blood poisoning developed, which caused his death twelve days after the wound was inflicted. The wound was not necessarily mortal, and would not have produced death but for the infection.

1. The plaintiff in error complains of the following charge: "If you believe that the defendant in this case voluntarily, willfully, and unlawfully shot the deceased, Griffin, in the manner alleged in the indictment, and not under circumstances of justification, and if you believe that the defendant thus inflicted upon the said E. J. Griffin a wound not necessarily mortal, but if you believe that such wound was the primary cause which produced other and secondary causes from which the death of E. J. Griffin resulted, the defendant would be guilty and responsible for the death of E. J. Griffin;" and of the refusal to give in charge, as requested: "While in a prosecution for murder negligence in the treatment of a mortal wound or unskillful treatment of a wound which was not necessarily mortal, but which was the primary cause which produced other and secondary causes from which the death of the deceased resulted, will not relieve the accused of responsibility for the death of the deceased, this rule does not apply in any cases where it appears that the wound inflicted was not mortal or such a wound as, in the ordinary course of human events, naturally tended to produce the secondary or intervening cause from which death resulted." It will be noted, in reading the charge to which exception is taken, that the court based it upon the hypothesis that the defendant unlawfully shot the deceased in the manner alleged in the indictment, that is to say, he shot him with a pistol, with malice aforethought. It is too well settled to require argument that if one willfully, unlawfully, and with malice aforethought shoots another with a pistol, inflicting a wound which, though not necessarily mortal, is the

primary cause of a disease which brings about the death of the wounded person, he is guilty of murder. *Downing* v. *State,* 114 *Ga.* 30 (39 S. E. 927) ; *Scott* v. *State,* 132 *Ga.* 357 (64 S. E. 272) ; *Allen* v. *State,* 133 *Ga.* 260 (65 S. E. 431) ; *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184) ; Wharton on Homicide, § 34.   The requests to charge were properly refused.   The law on this subject is thus laid down by Lord Hale: "If a man gives another a stroke, which, it may be, is not in itself so mortal, but that with good care he might be cured, yet if he dies of this wound within the year and day, it is homicide or murder, as the case is, and so it hath been always ruled. But if the wound or hurt be not mortal, but with ill applications by the party, or those about him, of unwholesome salves or medicines the party dies, if it can clearly appear that this medicine, and not the wound, was the cause of his death, it seems it is not homicide, but then that must appear clearly and certainly to be so. But if a man receives a wound, which is not in itself mortal, but either for want of helpful applications, or neglect thereof, it turns to a gangrene, or a fever, and that gangrene or fever be the immediate cause of his death, yet this is murder or manslaughter in him that gave the stroke or wound, for that wound, though it were not the immediate cause of his death, yet, if it were the mediate cause thereof, and the fever or gangrene was the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so consequently is causa causati." 1 Hale's P. C. *428.   The evidence was without conflict that the cause of the decedent's death was septicæmia imputable to the wound.   If the death be owing to the wound, it signifies nothing that the decedent would have recovered under more favorable circumstances or with more prudent care.

2. A former verdict of guilty was set aside because of the omission to instruct the jury on the law of voluntary manslaughter. *Clements* v. *State,* 140 *Ga.* 165 (78 S. E. 716).   At the second trial the court charged on that subject as follows:   "The court instructs you that there can be no murder without malice; and if you are so satisfied, that the defendant did unlawfully and intentionally kill the deceased in the manner alleged in the indictment, but if you are not satisfied beyond a reasonable doubt that such killing was accomplished with deliberation and malice, but if you believe from the evidence that the defendant, without malice,

and not under such circumstances as would justify or excuse the killing, but voluntarily killed the deceased, being impelled so to do by sudden impulse or passion, supposed to be irresistible, produced by some actual assault upon the defendant, or an attempt by the deceased to commit a serious personal injury upon the defendant, or other equivalent circumstances sufficient to justify the excitement of such passion, then the homicide would be voluntary manslaughter, unless there should have been an interval between the provocation given and the homicide, of which the jury are the judges, sufficient for the voice of reason and humanity to be heard; in which event he would be guilty of the crime of murder." This charge is criticised as being vague and indefinite. We do not think this criticism is meritorious; and moreover, if the defendant desired further instruction, he should have made a timely written request. *Dickens* v. *State*, 137 *Ga.* 523 (8), 530 (73 S. E. 826).

3. The court declined to charge that if the defendant unlawfully fired upon the deceased without any intention to kill, and the wound inflicted would not have resulted in death but for an intervening cause not likely to arise under ordinary circumstances, he could be convicted of the offense of involuntary manslaughter in the commission of an unlawful act. The defendant did not make a statement on the trial of the case, but introduced testimony to the effect that the deceased first fired upon him and he shot the deceased in self-defense. Under no view of the case was the law of involuntary manslaughter applicable to the evidence, and the court properly omitted any instruction on that grade of homicide.

4. One assignment of error relates to the failure of the court to instruct that the defendant might be convicted of the offense of assault with intent to murder. The evidence was without dispute that the decedent's death was caused by septicæmia imputable to the wound inflicted by the defendant. If the assault was made with intent to kill and murder, and death resulted, the defendant would be guilty of an unlawful killing; and it was proper to omit an instruction that the jury was authorized to find him guilty of an assault with intent to murder.

5. The evidence authorized the verdict, which has the approval of the court, and no error is made to appear.

*Judgment affirmed. All the Justices concur.*